Kevin P. Roddy, Esq.
WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Dr., Suite 900
Woodbridge, NJ 07095
Telephone: (732) 636-8000
Facsimile: (732) 726-6686
Email: kroddy@wilentz.com


William W. Palmer, Esq. (SBN 146404)
(*Pro Hac Vice Counsel*)
PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 972-0761
Facsimile: (916) 972-0877
wpalmer@palmercorp.com

Jonathan S. Massey
Bret R. Vallacher
Matthew E. Layden
(*Pro Hac Vice Counsel*)
MASSEY & GAIL LLP
1000 Maine Ave. SW
Suite 450
Washington, D.C. 20024
Telephone: (202) 650-5452
Facsimile: (312) 379-0467
jmassey@masseygail.com
bvallacher@masseygail.com
mlayden@masseygail.com

*Attorneys for Plaintiff Vial and proposed Class Members*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAIME VIAL, as representative of the heirs of Rene Correa Borquez and on behalf of other persons similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>ELIZABETH MAHER MUOIO, in her official capacity as TREASURER OF THE STATE OF NEW JERSEY; STEVEN HARRIS, in his official capacity as ADMINISTRATOR OF THE STATE OF NEW JERSEY UNCLAIMED PROPERTY ADMINISTRATION; and KELMAR ASSOCIATES, LLC,<br><br>      Defendants. | Case No.: 3:24-cv-11301<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

## TABLE OF CONTENTS

NATURE AND STAGE OF THIS PROCEEDING ...................................................... 1

INTRODUCTION ..................................................................................................... 1

I.     STATEMENT ................................................................................................ 3

       A.     Statutory Background ......................................................................... 3

       B.     NJUPA's Constitutionally Inadequate Pre-Deprivation Notice ........... 4

       C.     NJUPA's Constitutionally Inadequate Post-Deprivation Notice ........... 6

       D.     The Unconstitutional Seizure of Plaintiff's Property ......................... 9

II.    LEGAL STANDARD ........................................................................................ 11

III.   ARGUMENT ................................................................................................. 12

       A.     Plaintiff Is Likely To Succeed On The Merits .................................... 12

              1.     Plaintiff Has A Strong Likelihood of Success Under The Due Process
                     Clause Of The Fourteenth Amendment. ................................... 12

              2.     Plaintiff Has A Strong Likelihood of Success Under The Takings
                     Clause. ................................................................................... 16

       B.     Plaintiff And The Putative Class Will Suffer Irreparable Harm Without An
              Injunction. ........................................................................................ 19

       C.     The Balance Of Equities Is Firmly In Plaintiff's Favor Because New Jersey
              Has No Legitimate Property Interest In The Seized Property. ............ 20

       D.     The Requested Relief Is In The Public Interest. ................................ 20

CONCLUSION ........................................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**

*American Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*,
669 F.3d 359 (3d Cir. 2012) ................................................. 1

*Brown v. Legal Foundation of Washington*,
538 U.S. 216 (2003) ........................................................ 17

*Cedar Point Nursery v. Hassid*,
594 U.S. 139 (2021) ........................................................ 18

*Cerajeski v. Zoeller*,
735 F.3d 577 (7th Cir. 2013) ............................................... 15

*Dillow v. Treasurer of the Commonwealth of Pennsylvania*,
appeal docketed, No. 24-2004 (3d Cir. June 4, 2024) ...................... 18

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976) ........................................................ 21

*Highmark, Inc. v. UPMC Health Plan, Inc.*,
276 F.3d 160 (3d Cir. 2001) ............................................... 12

*Jacobs v. United States*,
290 U.S. 13 (1933) ......................................................... 17

*Jones v. Flowers*,
547 U.S. 220 (2006) .................................................... 14, 15

*Kim v. Hanlon*,
99 F.4th 140 (3d Cir. 2024 ................................................. 11

*Knick v. Township of Scott, Pa.*,
588 U.S.180 (2019) ........................................................ 18

*Kolton v. Frerichs*,
869 F.3d 532 (7th Cir. 2017) ............................................... 17

*Kremen v. Cohen*,
337 F. 3d 1024 (9th Cir. 2003) ............................................. 21

*Marathon Petroleum Corp. v. Sec'y of Fin. for Delaware*,
876 F.3d 481 (3d Cir. 2017) ............................................... 16

*Mennonite Bd. of Missions v. Adams*,
462 U.S. 791 (1983) ........................................................ 14

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950)..................................................................... 12, 13, 14, 15

*Murr v. Wisconsin*,
   582 U.S. 383, 392 (2017).................................................................... 18

*Nken v. Holder*,
   556 U.S. 418 (2009).......................................................................... 12

*Olson v. United States*,
   292 U.S. 246 (1934).......................................................................... 17

*Phillips v. Washington Legal Foundation*,
   524 U.S. 156 (1998).......................................................................... 17

*Reilly v. City of Harrisburg*,
   858 F.3d 173 (3d Cir. 2017) ................................................................ 12

*SeaboardAirLine R. Co. v. United States*,
   261 U.S. 299 (1923).......................................................................... 17

*Simon v. Weissmann*,
   301 F. App'x 107 (3d Cir. 2008) ..................................................... 17, 18

*Singer Mgmt. Consultants, Inc. v. Milgram*,
   650 F.3d 223 (3d Cir. 2011) ................................................................ 12

*Sniadach v. Family Fin. Corp. of Bay View*,
   395 U.S. 337 (1969).......................................................................... 14

*Springtree Apartments, ALPIC v. Livingston Parish Council*,
   207 F. Supp. 2d 507 (M.D. La. 2001)..................................................... 19

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*,
   535 U.S. 302 (2002).......................................................................... 18

*Taylor v. Chiang*, 2007 WL 1628050 (E.D. Cal. June 1, 2007),
   *vacated as moot*, 2007 WL 3049645 (E.D. Cal. Oct. 18, 2007),
   *aff'd*, 525 F.3d 1288 (9th Cir. 2008) .............................................. 16, 19

*Taylor v. Westly*,
   488 F.3d 1197 (9th Cir. 200.......................................................... 16, 19, 20

*Taylor v. Yee*,
   ___ U.S. ___, 136 S. Ct. 929 (2016).............................................. 15, 16

*Temple-Inland, Inc. v. Cook*,
   192 F.Supp.3d 527 (D. Del. 2016 ......................................................... 20

4

*Tulsa Pro. Collection Servs., Inc. v. Pope,*
 485 U.S. 478 (1988)................................................................................ 13

*United States Trust Co. of N.Y. v. New Jersey,*
 431 U.S. 1 (1977).................................................................................... 20

*United States v. 564.54 Acres Land,*
 441 U.S. 506 (1979)................................................................................ 17

*United States v. James Daniel Good Real Property,*
 510 U.S. 43 (1993)............................................................................ 13, 14

*United States v. Naftalin,*
 441 U.S. 768 (1979)................................................................................ 21

*United States v. Winstar Corp.,*
 518 U.S. 839 (1996)................................................................................ 20

*Webb's Fabulous Pharmacies, Inc. v. Beckwith,*
 449 U.S. 155 (1980)................................................................................ 17

*Western Union Telegraph Company v. City of Davenport,*
 97 U.S. 369 (1878).................................................................................. 21

**Statutes**

15 U.S.C. § 77.................................................................................................. 21

15 U.S.C. § 78.................................................................................................. 21

N.J. Stat. Ann. § 46:30B-1............................................................................... 1

N.J. Stat. Ann. § 46:30B-50.......................................................................... 4, 5

N.J. Stat. Ann. § 46:30B-51............................................................................. 5

N.J. Stat. Ann. § 46:30B-61............................................................................. 6

N.J. Stat. Ann. § 46:30B-68............................................................................. 8

N.J. Stat. Ann. § 46:30B-69............................................................................. 7

N.J. Stat. Ann. § 46:30B-7............................................................................... 3

N.J. Stat. Ann. § 46:30B-70............................................................................. 8

N.J. Stat. Ann. § 46:30B-71............................................................................. 8

N.J. Stat. Ann. § 46:30B-72............................................................................. 8

N.J. Stat. Ann. § 46:30B-74 ................................................................................................. 6

N.J. Stat. Ann. § 46:30B-79 ................................................................................................. 8

**Other Authorities**

Black's Law Dictionary (12th ed. 2024) .............................................................................. 4

T. Conrad Bower, *Inequitable Escheat?: Reflecting on Unclaimed Property Law and the Supreme Court's Interstate Escheat Framework*, 74 Ohio St. L.J. 515 (2013) ...................... 5

## NATURE AND STAGE OF THIS PROCEEDING

Plaintiff Jaime Vial (as legal representative of the heirs of Rene Correa Borquez) brings this action on behalf of himself and all others similarly situated (the putative "Class") against Elizabeth Maher Muoio, in her official capacity as Treasurer of the State of New Jersey; Steven Harris, in his official capacity as Administrator of the State of New Jersey Unclaimed Property Administration; and Kelmar Associates, LLC (collectively, "Defendants").  Plaintiff seeks a temporary restraining order and a preliminary injunction against application of New Jersey's escheatment scheme enacted in the New Jersey Uniform Unclaimed Property Act, N.J. Stat. Ann. § 46:30B-1 et seq., and other rules set forth in unpublished manuals, regulations, and practices (the "Act" or the "NJUPA").

## INTRODUCTION

"The purpose of unclaimed property laws is to provide for the safekeeping of abandoned property and then to reunite the abandoned property with its owner."  *American Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 365 (3d Cir. 2012).  New Jersey has stated that the NJUPA is aimed at "protecting consumers."   *New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 398 (3d Cir. 2012). But the NJUPA frustrates this avowed statutory purpose.

Under the Act, the Administrator seizes the supposedly "abandoned" property of purportedly "unknown" persons with no connection to New Jersey, without any prior notice.  The Administrator then auctions the property or otherwise sells it off, and retains the proceeds of the sale for the State's own use.  The property in question includes stock holdings, retirement investments, savings accounts, pension plans, contents of safe deposit boxes, wages, refunds, deposits, gift cards, and many other forms of property.  The NJUPA deems property "abandoned"

1

following a short period of inactivity and fails to provide constitutionally adequate notice – indeed, no notice at all in most instances – before the Administrator takes the property.

The NJUPA is generally considered to be one of the nation's most aggressive abandoned property statutes. The Council on State Taxation ("COST") graded all 50 states based on the aggressiveness of their abandoned property laws. New Jersey was listed as a "bottom-ranked" state and received the grade of "D."[1]

Currently, the Administrator holds over an estimated **$6 billion**[2] in purportedly "unclaimed" property[3] owned by such famous persons as the pop star Taylor Swift, the award-winning actress Meryl Streep, Governor Phil Murphy, and businesses associated with President-elect Donald J. Trump. The State of New Jersey deems all such persons "unknown" and purports to be unable to reunite these persons with the "unclaimed" property it has appropriated from them without constitutionally required notice.

Plaintiff and his family members are citizens and residents of Chile who received no notice at all before their property (securities with substantial value) was unconstitutionally seized and taken by Defendants under the NJUPA. *See* Declaration of Jaime Vial ("Vial Declaration"), ¶¶ 1-11. The NJUPA contains no provision for direct mail notice or individualized notice whatsoever to overseas property owners like Plaintiff alerting them that their property has been deemed "abandoned" and is subject to seizure by the State. In addition, the NJUPA provides for no direct

---

[1]    https://www.cost.org/globalassets/cost/state-tax-resources-pdf-pages/cost-studies-articles-reports/cost-scorecard--the-best-and-worst-of-state-unclaimed-property-laws-october-2013.pdf.

[2]    New Jersey law allows for the release only of the property owner's name and address. Therefore, just as it is for the private owners, it is difficult or impossible for the public to determine how much unclaimed property, at any time, is in the custody of the State of New Jersey.

[3]    New Jersey Department of the Treasury, nj.gov/treasury, https://www.nj.gov/treasury/news/2023/08212023.shtml#:~:text=Searching%20and%20filing%20claims%20on,being%20safeguarded%20by%20the%20State (last accessed Dec. 17, 2024).

mail or other form of individualized notice to property owners in connection with the State's seizure of their property where the property in question is valued at less than $50.

Plaintiff contacted the Administrator in an attempt to recover the property seized and taken by the State, but after years of delay, the Administrator grudgingly provided Plaintiff with only a fraction of the property's actual value.  The Administrator refuses to provide Plaintiff with adequate relief.  Absent the relief sought in this lawsuit, Plaintiff and the putative Class have no way to protect themselves against future unnoticed seizures of additional property they hold.

Because the NJUPA is unconstitutional both on its face and as applied, Plaintiff brings this action to secure prospective declaratory and injunctive relief, including injunctive relief requiring Defendant to return the property belonging to each Plaintiff and Class Member or otherwise put them in the same position monetarily as they would have occupied if the property had not been unconstitutionally seized and taken by the Administrator. In the meantime, Plaintiff asks the Court to halt the seizures and sales of private property until the NJUPA's constitutionality is resolved.

## I.    STATEMENT

### A.    Statutory Background

Under the NJUPA, property is deemed "abandoned" according to certain dormancy criteria specified in the Act, regardless of the owner's state or country of residency.  N.J. Stat. Ann. § 46:30B-7. The NJUPA does not use the traditional understanding of "abandonment" – i.e., the knowing and voluntary "relinquishing of a right or interest with the intention of never reclaiming it."  Black's Law Dictionary (12th ed. 2024).  Rather, the NJUPA uses a short, three-year "dormancy" period to determine whether shares of stock may be deemed dormant and, therefore, "abandoned."  N.J. Stat. Ann. § 46:30B-7. Thus, if an account is inactive for three years – for example, if a customer is using a buy-and-hold approach to investment, makes no deposits or

withdrawals, receives no dividends (which is not uncommon for many "blue chip" stocks) for three years – the account can be listed as "abandoned."

The NJUPA requires that financial institutions and other entities holding so-called "abandoned" property transfer it to the New Jersey State Unclaimed Property Administration (the "Administration"), led by the Administrator. N.J. Stat. Ann. § 46:30B-46. Defendants have outsourced their statutory obligations (including the identification of supposedly "abandoned" property, the provision of direct mail notice to certain property owners, and the management of the website) to private auditors, which are responsible for operating the statutory scheme. These audit firms are compensated on a contingent-fee basis – typically, 10 to 15 percent of any unclaimed property seized. (Fees for the seizure of property are paid not by the individual property owner but by other property owners under the NJUPA.) Such a fee structure provides a profit incentive to auditors to aggressively seize as much property as possible and to minimize the provision of notice that would enable private owners to prevent seizure of their property. The use of contingent fee auditors (which, of course, creates financial incentives for aggressive and unconstitutional seizures of property) is inconsistent with the stated purpose of unclaimed property laws, which is to return property to its rightful owner. The NJUPA has become a "vehicle for aggressive revenue generation" through the combination of reduced abandonment periods, expanded definitions of unclaimed property, and use of contingent-fee unclaimed property auditors. T. Conrad Bower, *Inequitable Escheat?: Reflecting on Unclaimed Property Law and the Supreme Court's Interstate Escheat Framework*, 74 Ohio St. L.J. 515, 528 (2013).

### B.    NJUPA's Constitutionally Inadequate Pre-Deprivation Notice

The NJUPA does not require individualized notice of any kind prior to seizure of property valued at less than $50. For property valued in excess of $50, the holder of the property must send, by certified mail with return receipt requested, a written notice to the apparent owner at their last

4

known address informing them that the holder will be turning over their property to the State of New Jersey.  N.J. Stat. Ann. § 46:30B-50.

There is no provision in the NJUPA providing for notice to property owners who do not live in the United States.  The NJUPA provides for individualized notice in only one form, a letter posted by certified mail.  *See* N.J. Stat. Ann. § 46:30B-50.  But the United States Postal Service only offers certified mail within the United States, apart from service to U.S. military and diplomatic installations.  Thus, the Act contains no individualized notice provision for individuals with addresses located outside the United States.  Plaintiff received no mail or other notice prior to the seizure of the relevant property.  *See* Vial Declaration ¶ 11.

For property valued at $100 or more, the NJUPA provides for—in addition to the certified letter required by N.J. Stat. Ann. § 46:30B-50—the publication of the name and last known addresses (if any) in a newspaper circulating in the New Jersey county of that last known address at least once per week for two consecutive weeks.  Or "[i]f the address is outside this State, the notice shall be published in the county in which the holder of the property has its principal place of business within this State."  N.J. Stat. Ann. § 46:30B-51.  Thus, published notice is never provided outside the State of New Jersey, regardless of where the owner of the property resides or previously resided.  And the newspaper advertisement is woefully inadequate.  Using extremely small print, it purports to provide "notice" to property owners whose endowment policies, annuity contracts, or other personal property may be in the custody of the New Jersey Administrator.  *See* Declaration of Cherese Bayani.  The advertisement does not list either names or shares of stock that have been seized.  It does not even mention stock or securities as an example of property that might have been seized.

5

Moreover, a resident of Chile (like Plaintiff) would have no access to local New Jersey newspapers, which are written in English, and no reason to look there to review publication notice. The newspaper notice under the NJUPA is meaningless to Plaintiff and other foreign property owners, as well as those residing in other States.

"[O]nce property has been deemed abandoned, the holder turns it over to the state while the original property owner still maintains the right to the property." *American Express Travel Related Services*, 669 F.3d at 365.    Under the NJUPA, "the state assumes custody and responsibility for the safekeeping of the property." N.J. Stat. Ann. § 46:30B-61. Thus, although the property is transferred to the State, the Administrator holds the presumed abandoned property in trust until claimed by the owner or the owner's successor in interest. Defendants act in the capacity of a trustee and custodian of private funds. The Administrator manages an unclaimed property trust fund, which under the NJUPA is "administered and invested by the State Treasurer, and used to pay claims duly presented and allowed and all expenses and costs incurred by the State of New Jersey." N.J. Stat. Ann. § 46:30B-74(a).

### C.    NJUPA's Constitutionally Inadequate Post-Deprivation Notice

After property is transferred to the Administrator by holders, the NJUPA continues to deny owners meaningful notice, even after they have been deprived of their property. The Administrator places the owner's name and last known address on a searchable Internet website (https://unclaimedfunds.nj.gov/app/claim-search) that property owners may visit if they know it. However, many property owners (like Plaintiff) are unaware of the website. It defies common sense to expect out-of-state residents to search a New Jersey website when they and their property have no nexus with New Jersey. In addition, the website fails to provide the constitutionally required prior notice before property is seized. It shifts the notice burden from the government to

6

the owners to ferret out the information on their property after it has been seized by the Administrator.

Moreover, the website is rife with technical limitations.  *See* Declaration of Jan Peters ("Peters Declaration") at ¶¶ 4-17.  It is "primitive" and produces voluminous search results in no discernible order.  *Id*. at ¶ 4.  It does not allow any narrowing or filtering of the search by any parameters - such as searching for an exact match to a particular name by using quotation marks around the full name.  *Id*.  Because search results are capped at 1,000 entries, some seized properties will go unlisted and unreported.  *Id*. at ¶ 8.

Moreover, the website provides only a "property ID" and does not contain a description of the property to allow owners to determine whether the property in question is in fact theirs.  Such a description would also help individuals determine what exactly was taken. *Id*. at ¶ 12.  Nor does the website provide the date when the property was taken or its value, which would also assist owners determine what exactly was taken.  *Id*. at ¶¶ 13-14.  With no notice, many individuals are unaware that their property has been transferred to the Administration or of the procedure for seeking its return.  Accordingly, property owners are highly unlikely to avail themselves of this procedure and, in fact, only a small portion of seized property is ever returned.  As a practical matter, the private property is often sold or destroyed before this limited information is posted to the website.

After providing totally inadequate notice, the Act provides "the administrator ***shall***, within three years after the receipt of abandoned property, sell it to the highest bidder at public sale in whatever municipality in the state affords in the judgment of the administrator the most favorable market for the property involved."  N.J. Stat. Ann. § 46:30B-69 (emphasis added).  This section includes exceptions for property of sufficiently low value that sale would be, in the judgment of

the administrator, unprofitable. *Id.* There is also a further requirement that notice of the sale be published "at least three weeks in advance of sale, in a newspaper of general circulation in the county in which the property is to be sold." *Id.* This notice requirement is directed at the location of the sale and is, in essence, no more than an advertisement of the State's sale.

The Act generally requires that seized property be held for at least one year before it may be sold. N.J. Stat. Ann. § 46:30B-71.[4] Thus, ordinarily, seized property will be sold at some point between one year and three years after it is seized.

The sales provision applies to all types of property, including securities. The Act requires that "[s]ecurities listed on an established stock exchange shall be sold at prices prevailing at the time of sale on the exchange. Other securities may be sold over the counter at prices prevailing at the time of sale or by any other method the administrator considers advisable." N.J. Stat. Ann. § 46:30B-70.

Obviously, the sale of securities is highly sensitive to the time of the sale. A sale at the wrong moment (let alone the wrong year) could mean a significant difference in realized profits. Under the Act, "[w]henever property other than money is paid or delivered to the administrator under this chapter, the owner is entitled to receive from the administrator any dividends, interest, or other increments realized or accruing on the property at or before liquidation or conversion thereof into money." N.J. Stat. Ann. § 46:30B-68. But after the sale is complete, a successful claimant is entitled only to "the net proceeds of the sale," N.J. Stat. Ann. § 46:30B-79, and the

---

4    There is a significant carve out to the one-year hold requirement: the Administrator may sell a security before the one-year hold period expires if it "considers it to be in the best interest of the State to do otherwise." N.J. Stat. Ann. § 46:30B-71; *see also* N.J. Stat. Ann. § 46:30B-72 (including the same carve out for the sale of securities but providing a small exception allowing for payment of the value of sold securities at the time of the claim if a claim is made *during* the one-year period that the security should ordinarily have been held). This exception is so broad as to render the one-year hold requirement meaningless in terms of restrictive power.

NJUPA denies interest to the property owner after the sale or conversion of property by the State. *See id.; id.* at § 46:30B-68.

**D.    The Unconstitutional Seizure of Plaintiff's Property.**

Plaintiff Jaime Vial is a Chilean engineer and legal representative of the Estate of Rene Correa Borquez. *See* Vial Declaration ¶ 1. There is no nexus between the members of the Borquez family and the State of New Jersey. No member of the family has ever resided in New Jersey. *Id.* at ¶ 4. All the heirs of Mr. Rene Borquez empowered Plaintiff Vial under Chilean law to recover Mr. Borquez's property unlawfully seized by state governments in the United States. *Id.* at ¶¶ 2, 13. Plaintiff Vial has been recognized by the State as the rightful legal representative to seek the return of the seized property belonging to Rene Correa Borquez. *Id.* at ¶¶ 14-17.

Mr. Borquez owned property that was seized by the Administrator without notice. For example, he purchased Exxon stock (later Exxon Mobil stock) that was seized by the Administrator:

| Date of Purchase | Number of shares | Number today after stock splits |
|---|---|---|
| July 22, 1977 | 100 | 1,600 |
| May 16, 1981 | 100 | 800 |
| August 14, 1987 | 200 | 1,600 |
| April 11, 1997 | 400 | 1,600 |
| March 13, 2000 | 105 | 210 |
| **Total** | 905 | 5,810 |

*Id.* at ¶¶ 6-7. He owned other stock of companies with addresses in New Jersey that may have been seized as well. *Id.* at ¶¶ 8-9. The name and address of Mr. Rene Borquez in Chile were

associated with all of the accounts, and it would have been practicable to give him, and his heirs individualized notice as to the stocks he owned. *Id*. at ¶ 5. But neither Plaintiff, any heir, nor any other representative of Mr. Rene Borquez's or his brother's estates received *any* notice that the Administrator had seized the above property. *Id*. at ¶ 11. No written or published notice was ever received. *Id*. Had the Administrator provided Mr. Borquez or his heirs notice of the property seizure, they could have acted to prevent it. *Id*.

Plaintiff, as representative of all of the heirs of Mr. Borquez, contacted the Administrator requesting the return of the property. *Id*. at ¶ 14. Plaintiff submitted a claim and provided the Administrator with supporting documentation. *Id*. at ¶ 15. Plaintiff completed the claims process.

For years Plaintiff engaged in extensive communications with the Unclaimed Property Administration in New Jersey. *Id*. at ¶ 16. Finally, after years of delay, he ultimately received a response dated November 6, 2023, acknowledging his claim and his authority to represent the Borquez family. *Id*. at ¶ 16. He also received a check dated November 8, 2023, in the sum of $487,581.23 from the Administrator regarding Mr. Borquez's Exxon Mobil stock. *Id*. at ¶ 17.

But the final sum received by Plaintiff is grossly inadequate and reflects the unnoticed sale of Plaintiff's Exxon Mobil stock (as well as any property seized in addition to that stock). *Id*. at ¶ 18. The sum does not include dividends or post-sale interest and fails to reflect the market value of the stock. For example, the market value of the Exxon Mobil stock was approximately $603,000 as of the November 8, 2023, opening price (the date of the Administrator's check) and approximately $623,936.00 as of the December 19, 2024 opening price (the date on which Plaintiff filed this lawsuit in this Court). *Id*. In short, the Administrator's check fails to put Plaintiff in the same position monetarily as he would have occupied if the property had not been seized and taken by the Administrator.

The Administrator's seizure of the Borquez family's stock creates irreparable harm. Stock, after all, represents an ownership interest in a business, and carries with it certain rights fundamental to business ownership. *Id*. at ¶ 19. Among those rights are the right to vote on important company matters, such as who serves on the Board of Directors, mergers, and various shareholder referenda that occur from time to time. *Id*. Also among those rights are the right to receive or reinvest a share of the distribution of profits (dividends), and the right to receive annual reports, proxy materials, and other information from the company. *Id*. Once the shares were seized and sold, the Borquez family heirs were irreparably deprived of each of these rights.

Currently, Plaintiff and the Borquez family members own other stocks and property, such as bank accounts, that they do not wish to be subject to Defendants' unnoticed property seizure process. *Id*. at ¶ 20. Yet Plaintiffs and Class Members have no way to protect themselves from repetition of the unconstitutional NJUPA process as it currently operates to cause irreparable harm to the public.

Plaintiff continues to suffer ongoing injury from the NJUPA. He is the owner of and legal representative for additional property potentially vulnerable to seizure and taking under the NJUPA. *Id*. at ¶ 21. He is required to monitor that property continuously in order to ensure that the Administrator does not attempt to seize it. *Id*. He is incurring, and will continue to incur, the real and concrete cost of having to constantly monitor his property to avoid escheat, including retention of counsel in the United States. The NJUPA also deters Plaintiff from acquiring further property that might be subject to seizure under the NJUPA. Absent the NJUPA, Plaintiff would take concrete steps toward the acquisition of other property in the United States. *Id*. at ¶ 22.

## II. LEGAL STANDARD

"To obtain any preliminary injunction, a plaintiff must show (1) he will likely succeed on the merits; (2) he will likely suffer irreparable injury; (3) the balance of equities favors him; and

(4) the injunction serves the public interest." *Kim v. Hanlon*, 99 F.4th 140, 154 (3d Cir. 2024); *see also Ojo v. Charles*, No. 23-22808 (ES), 2024 WL 5165236, *4 (D.N.J. Dec. 19, 2024). The first two prongs are "gateway factors"—prerequisites to be "balance[d]" against the remaining prongs. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). When the State is a defendant, the preliminary injunction factors of harm to the opposing party and public interest are combined. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). A request for a TRO is governed by the same general standards that govern the issuance of a preliminary injunction." *Otsuka Pharm. Co., Ltd. v. Torrent Pharms. Ltd., Inc.*, 99 F. Supp. 3d 461, 475 (D.N.J. 2015).

## III.   ARGUMENT

### A.   Plaintiff Is Likely To Succeed On The Merits

In order to demonstrate that there is a likelihood they will prevail on the merits, parties must "prove a prima facie case, not a certainty that he or she will win." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001) (citation omitted). This showing "does not mean more likely than not" and instead amounts to a reasonable chance, or probability, of winning. *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011).

Plaintiff has asserted two constitutional claims in this case – due process and takings – and he has a strong likelihood of success under each.

#### 1.   Plaintiff Has A Strong Likelihood of Success Under The Due Process Clause Of The Fourteenth Amendment.

It is black-letter law that ***before*** any deprivation of property, the Due Process Clause requires a state to provide the holder "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). In *Mullane*, the

Supreme Court held that notice by newspaper publication with respect to known beneficiaries of

a trust did not satisfy due process:

> It would be idle to pretend that publication alone as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts. It is not an accident that the greater number of cases reaching this Court on the question of adequacy of notice have been concerned with actions founded on process constructively served through local newspapers. Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed. The chance of actual notice is further reduced when as here the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention. In weighing its sufficiency on the basis of equivalence with actual notice we are unable to regard this as more than a feint.

*Id.* at 315.

In this case, ***the NJUPA provides no pre-deprivation notice at all*** to the Plaintiff and the

Class.  Thus, the due process question presented here is even simpler than the issue in *Mullane*.

Defendants seize private property under the NJUPA with ***no prior notice whatsoever.***  Plaintiff

and his predecessors in interest received no notice at all before their property was

unconstitutionally seized by Defendants under the NJUPA, even though their names and addresses

were readily ascertainable. Even today, persons whose property is valued at less than $50 are not

entitled to any notice before or after New Jersey seizes that property.

The NJUPA violates basic principles of due process.  "The right to prior notice"—***before***

the State seizes or appropriates property—"is central to the Constitution's command of due

process." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 53 (1993).  "[A]ctual

notice is a minimum constitutional precondition to a proceeding which will adversely affect the

liberty or property interests of *any* party."  *Tulsa Pro. Collection Servs., Inc. v. Pope*, 485 U.S.

478, 485 (1988) (citation omitted) (emphasis in original).

"[E]ven the temporary or partial impairments to property rights that such encumbrances entail are sufficient to merit due process protection." *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991); *see also Fuentes v. Shevin*, 407 U.S. 67, 86 (1972) ("The Fourteenth Amendment draws no bright lines around three-day, 10-day or 50-day deprivations of property. Any significant taking of property by the State is within the purview of the Due Process Clause.").  Due process notice is required even when the State has an interest in the revenue generated by the seizure.  In *Jones v. Flowers*, 547 U.S. 220 (2006), the Supreme Court held that even where a property owner had failed to pay his taxes, the government could not seize his property without providing meaningful pre-deprivation notice: "*[b]efore* a state may take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.'"  *Id.* at 223 (emphasis added and quoting *Mullane*, 339 U.S. at 313).   And even property with a small value is entitled to due process protection.  *See Fuentes*, 407 U.S. at 72 (loss of household goods (including clothes, furniture, and children's toys) was significant enough to warrant due process protection); *Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337, 338 (1969) ($34 garnishment).

Defendants' reliance on the unclaimed property website fails. First, the website offers only *post-deprivation* notice *after* the State has already seized the property.  That is unconstitutionally inadequate and improperly puts the onus on the public to find and search a website for the proceeds of their property, if they happen to believe it has been taken by the State.  *See James Daniel Good Real Property*, 510 U.S. at 54; *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799 (1983); *Fuentes*,  407 U.S. at 85.  Further, the website, maintained by profit-driven auditors, is not meaningful notice. It is plagued by technical shortcomings.  *See* Peters Declaration at ¶¶ 4-17. And property owners who have received no prior notice that their property has been seized have

14

no reason to look at the State's website to try to identify their appropriated property.  *Mullane* held that newspaper advertisements are not constitutionally adequate (except in special circumstances) because "[c]hance alone" brings a person's attention to "an advertisement in small type inserted in the back pages of a newspaper."  *Mullane*, 339 U.S. at 315.  The same is true of New Jersey's website, particularly for residents of other countries and states, who have no reason to consult a New Jersey website regarding their property.

Moreover, the NJUPA allows New Jersey to list seized property without a description or estimate of its value.  *See* Peters Declaration at ¶¶ 12-14.  Property worth less than $50 is typically aggregated rather than individually listed, so even if owners of property worth less than $50 happen upon the website, they will not find individually identifiable information for their property.  In reality, the website conveys no notice at all to property owners and is nothing more than a catalogue of the owners' sold and destroyed property.  New Jersey has effectively outsourced the provision of notice to private auditors, whose financial interest lies in affording little or no meaningful notice. Defendants may not rely on private auditors to "relieve[] the State of its constitutional obligation to provide adequate notice."  *Jones v. Flowers*, 547 U.S. at 232.

Justices of the U.S. Supreme Court have already expressed constitutional concern about state unclaimed property laws.  *See Taylor v. Yee*, ___ U.S. ___, 136 S. Ct. 929, 930 (2016) (Alito, J., joined by Thomas, J., concurring in the denial of certiorari) ("This trend—combining shortened escheat periods with minimal notification procedures—raises important due process concerns. As advances in technology make it easier and easier to identify and locate property owners, many States appear to be doing less and less to meet their constitutional obligation to provide adequate notice before escheating private property. . . . States must employ notification procedures designed to provide the pre-escheat notice the Constitution requires.")*; see also Cerajeski v. Zoeller*, 735

F.3d 577, 582 (7th Cir. 2013) (Posner, J.) (three-year dormancy period for determining abandonment was "a period so short as to present a serious question whether it is consistent with the requirement in the Fourteenth Amendment that property not be taken without due process of law").

In *Taylor v. Westly*, 488 F.3d 1197 (9th Cir. 2007), the Ninth Circuit directed the entry of an injunction against California's Unclaimed Property law for violations of the U.S. Constitution similar to those alleged in this case. *Id.* at 1200–02. The Ninth Circuit rejected California's defense of a similar scheme to acquire ostensibly "unclaimed" property and opined that it did not comply with the "requirement that notice be given *before* an individual's control of his property is disturbed." *Id.* at 1201 (emphasis added). Following the Ninth Circuit's ruling, a federal district court issued a preliminary injunction against California's scheme. *Taylor v. Chiang*, 2007 WL 1628050 (E.D. Cal. June 1, 2007), *vacated as moot*, 2007 WL 3049645 (E.D. Cal. Oct. 18, 2007), *aff'd*, 525 F.3d 1288, 1289 (9th Cir. 2008). *See also Marathon Petroleum Corp. v. Sec'y of Fin. for Delaware*, 876 F.3d 481, 488 (3d Cir. 2017) ("[I]n recent years, state escheat laws have come under assault for being exploited to raise revenue rather than to safeguard abandoned property for the benefit of its owners." (citing *Taylor v. Yee*, 136 S. Ct. 929, 930 (2016)) (internal quotation marks omitted)).

### 2. Plaintiff Has A Strong Likelihood of Success Under The Takings Clause.

The NJUPA is unconstitutional for an additional reason: it purports to authorize Defendants to take private property (such as Plaintiff's valuable stock) without just compensation, in violation of the Fifth Amendment. Under the NJUPA, the Administrator appropriates private property and permanently divests owners of that property by selling it or otherwise disposing of it. Once this property is auctioned off or destroyed by operation of the NJUPA scheme, *the most* the rightful

owner could recover under the NJUPA is the salvage value or part of the monetary proceeds of the sale—with no compensation for interest or the lost appreciation in the property's value.

The failure to pay compensation for the lost appreciation of property (and interest on appropriated property after its liquidation) violates the longstanding rule under the Fifth Amendment that "compensation must generally consist of the total value of the property when taken, plus interest from that time." *Jacobs v. United States*, 290 U.S. 13, 17 (1933) (quoting *SeaboardAirLine R. Co. v. United States*, 261 U.S. 299, 306 (1923)).  A property owner must be put "'in as good a position pecuniarily as if his property had not been taken.'" *United States v. 564.54 Acres Land*, 441 U.S. 506, 510 (1979) (quoting *Olson v. United States*, 292 U.S. 246, 255 (1934)).  The Takings Clause protects the time value of money or property as much as it protects the money or property itself. *See Brown v. Legal Foundation of Washingto*n, 538 U.S. 216, 235 (2003); *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 165-72 (1998); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162 (1980).  In *Cerajeski*, 735 F.3d at 583, and again in *Kolton v. Frerichs*, 869 F.3d 532, 533 (7th Cir. 2017), the Seventh Circuit held that the failure of an unclaimed property scheme to pay interest represented a taking of property in violation of the Fifth Amendment.

Although the Third Circuit held in an unpublished opinion in *Simon v. Weissmann*, 301 F. App'x 107 (3d Cir. 2008), that the Takings Clause did not require Pennsylvania to pay interest on unclaimed property, that case does not govern here.  *Simon* involved the situation where "the identity and/or whereabouts of the property owner [were] unknown during the time the Commonwealth possessed the property." *Id.* at 112.  Here, the relevant names and addresses of the property owners of Mr. Borquez stock were at all times easily ascertainable.  Indeed, Mr. Borquez's heirs specifically requested the return of the property.

Moreover, *Simon* did not address the issue of a State's obligation to pay just compensation *for the time it uses unclaimed private property for public purposes*. Under the Fifth Amendment, a State may not use private property — even temporarily — for public purposes without paying compensation to the private property owner. Indeed, the "plain language of the Takings Clause 'requires the payment of compensation whenever the government acquires private property for a public purpose.'" *Murr v. Wisconsin*, 582 U.S. 383, 392 (2017) (citation omitted). Nor did *Simon* address the issue of the State's duty to provide compensation for the appreciation in stock value that was lost because of the State's unilateral decision to sell the stock. *See also Dillow v. Treasurer of the Commonwealth of Pennsylvania, appeal docketed*, No. 24-2004 (3d Cir. June 4, 2024) (presenting similar questions as *Simon*).

The Takings Clause is fully applicable to the NJUPA scheme despite its custodial nature – i.e., despite the fact that property is held in trust for return to its rightful owner. The State's duty to pay just compensation under the Takings Clause "arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner." *Knick v. Township of Scott, Pa.*, 588 U.S.180, 181 (2019). Temporary takings of property are still takings, even if limited in duration. "[A] physical appropriation is a taking whether it is permanent or temporary; the duration of the appropriation bears only on the amount of compensation due." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 140 (2021). *See also Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 322 (2002) ("compensation is mandated" even when government's "use [of property] is temporary"). Plaintiff has received only a fraction of the value of his property from New Jersey. The property of thousands of Class Members has been taken in its entirety, without any notice. The NJUPA is plainly unconstitutional under the Fifth Amendment.

**B.    Plaintiff And The Putative Class Will Suffer Irreparable Harm Without An Injunction.**

The "violation of constitutional rights constitutes irreparable injury as a matter of law." *Springtree Apartments, ALPIC v. Livingston Parish Council*, 207 F. Supp. 2d 507, 515 (M.D. La. 2001). Moreover, Plaintiff and the putative Class risk ongoing irreparable harm to their property if Defendants are allowed to continue to seize and sell personal property under the NJUPA. The sale of stock is accomplished with no notice to the shareholder, who is left holding a worthless paper stock certificate with a canceled CUSIP number.

As the Ninth Circuit opined in directing the entry of an injunction against the California unclaimed property scheme, "[o]nce the property is sold, it may be impossible for plaintiffs to reacquire it, thus creating the requisite irreparable harm." *Westly*, 488 F.3d at 1202 (internal quotation omitted). The federal district court (Hon. William B. Shubb) explained, when entering that injunction, that "[w]hen [the government] takes custody of property pursuant to the [unclaimed property law], even temporarily, certain rights associated with ownership are lost which are not compensable in money damages." *Chiang*, 2007 WL 1628050, at *2. For example, "when securities are transferred out of the owner's name by the state, the owner is deprived of the right to vote his or her shares in important matters of corporate governance." *Id. See also* Vial Declaration ¶ 19. The owner also loses the right to receive dividends, or to have the dividends reinvested. *Id.* In addition, "[w]hile the state holds those securities, the owner is deprived of the ability to sell them." *Chiang*, 2007 WL 1628050, at *2. "As another example, when the contents of a safe deposit box are seized, the owner is deprived of the use of those articles pending the process he or she must go through to get them returned." *Id.* Indeed, the Administrator holds the contents of safe deposit boxes for varying periods of time and then auctions them off; the

sentimental value of the property (such as family heirlooms or photos) is irreplaceable.  Even at

this early stage, the relevant facts are beyond dispute and establish irreparable harm.

### C.    The Balance Of Equities Is Firmly In Plaintiff's Favor Because New Jersey Has No Legitimate Property Interest In The Seized Property.

The rights of property owners to their property greatly outweigh the State's interest in using

that property as a revenue source while it fails to notify the owner of its possession. Given the

State's seizure of property with inadequate notice under the NJUPA, it has no legitimate interest

in the "protection" of seized property for the owner's benefit.  "[U]nclaimed property laws were

never intended to be a tax mechanism whereby states can raise revenue as needed for the general

welfare.  States violate substantive due process if the sole purpose of enacting an unclaimed

property law is to raise revenue."  *Temple-Inland, Inc. v. Cook*, 192 F.Supp.3d 527, 548 (D. Del.

2016).  "There is no lack of funding exception to the Due Process Clause." *Taylor v. Westly*, 402

F.3d 924, 936 (9th Cir. 2005) (internal quotation omitted).

Far from supporting Defendants, the government's own fiscal self-interest (as well the

financial interest of the private auditors the State has incentivized to administer its scheme) support

Plaintiff's request for relief.  The Supreme Court has long expressed constitutional "concern with

governmental self-interest" when "the State's self-interest is at stake.'" *United States v. Winstar

Corp.*, 518 U.S. 839, 896 (1996) (quoting *United States Trust Co. of N.Y. v. New Jersey*, 431 U.S.

1, 26 (1977)).  Thus, the equities are firmly in favor of Plaintiff and the putative class.

### D.    The Requested Relief Is In The Public Interest.

Ensuring that the State complies with the Constitution and rule of law is always in the

public interest.  Further, by undermining property rights, the NJUPA also interferes with the

efficient operation of securities markets, which disserves the public interest. The property seized

by the Administrator includes securities subject to extensive federal regulation under the Securities

Act of 1933, 15 U.S.C. §§ 77a-77bbb, and the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78a-78hh.  These statutes are designed "to protect investors" and "to promote ethical standards of honesty and fair dealing," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1976)—not to allow states to appropriate the property of unwary investors without adequate notice or disclosures. *See United States v. Naftalin*, 441 U.S. 768, 775 (1979) (observing that the securities laws were meant "to restore the confidence" of investors that their property would be secure).  Unauthorized stock transfers are prohibited. *Western Union Telegraph Company v. City of Davenport*, 97 U.S. 369, 372 (1878); *Kremen v. Cohen*, 337 F. 3d 1024, 1035 (9th Cir. 2003).  Defendants' actions frustrate the federal statutory purposes and undermine investor confidence in the security of their property.

## **CONCLUSION**

For the preceding reasons, the motion for temporary restraining order and preliminary injunction should be granted, and this Court should enter an order of prospective declaratory and injunctive relief.

Dated: February 3, 2025                    Respectfully submitted,

*/s/ Kevin P. Roddy*
Kevin P. Roddy, Esq.
WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Dr., Suite 900
Woodbridge, NJ  07095
Telephone:  (732) 636-8000
Facsimile:   (732) 726-6686
Email: kroddy@wilentz.com

William W. Palmer, Esq.
(*Pro Hac Vice Counsel*)
PALMER LAW GROUP, a PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 972-0761
Email: wpalmer@palmercorp.com

21

Jonathan S. Massey
Bret R. Vallacher
Matthew E. Layden
(*Pro Hac Vice Counsel*)
MASSEY & GAIL LLP
1000 Maine Ave. SW
Suite 450
Washington, D.C. 20024
Telephone: (202) 650-5452
Email: jmassey@masseygail.com
Email: bvallacher@masseygail.com
Email: mlayden@masseygail.com

*Attorneys for Plaintiff Vial and Class Members*

<u>**CERTIFICATE OF SERVICE**</u>

I, Kevin P. Roddy, hereby certify that on this 3rd day of February, 2025, I filed the foregoing Memorandum In Support of Motion for Temporary Restraining Order and Preliminary Injunction with the Clerk of Court using the CM/ECF system, which will effect service on all participating Defendants.


*/s/ Kevin P. Roddy*
Kevin P. Roddy
Attorney for Plaintiff