COLE SCHOTZ P.C.

Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, NJ 07602-0800
201-489-3000    201-489-1536  fax
—
New York
—
Delaware
—
Maryland
—
Texas
—
Florida

Elizabeth A. Carbone
Member
Admitted in NJ and NY

Reply to New Jersey Office
Writer's Direct Line: 201.525.6299
Writer's Direct Fax: 201.678.6299
Writer's E-Mail: ecarbone@coleschotz.com

February 28, 2025

**Via CM/ECF Filing**
Honorable Robert Kirsch, U.S.D.J.
United States District Court for the District of New Jersey
Clarkson S. Fischer Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

> Re:   *Borquez v. Muoio*, Case No. 3:24-cv-11301-RK-JBD
>        **Joint Letter Concerning Proposed Scheduling**

Dear Judge Kirsch:

This firm, along with Hemenway & Barnes LLP, is counsel for defendant, Kelmar Associates, LLC ("*Kelmar*"), in the above-referenced civil rights action.  In accordance with the Court's February 11, 2025 Text Order [Dkt. No. 31], we write jointly with all parties to respectfully submit the parties' proposals concerning the preliminary injunction motion filed by plaintiff, Jaime Vial, as the representative of heirs of Rene Correa Borquez ("*Plaintiff*"), on February 3, 2025 [Dkt. No. 21] and Defendants'[1] putative motions to dismiss.  *See* Pre-Motion Ltrs. [Dkt. Nos. 27 & 29].

## I.    THE PRELIMINARY INJUNCTION

### A.    Plaintiff's Position

As explained below, Plaintiff seeks to develop a record—comprised of joint stipulations where possible and narrowly-tailored discovery where necessary—to fully inform the Court when it adjudicates Plaintiff's motion for a preliminary injunction.  Defendants seek to short-circuit that process, forcing Plaintiff to amend his complaint earlier than the Rules permit and have the entire case decided in a vacuum on the pleadings.  For the reasons explained below, Defendants' proposed course of action contravenes precedent from this Court, abrogates Plaintiff's rights under the Federal Rules of Civil Procedure, and it does not serve the interests of the Parties, the Court, or justice.

"[E]xpedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings."  *See, e.g.*, *McKinsey & Co., Inc. United*

---

[1] The term "*Defendants*" shall mean and refer to Kelmar as well as defendants, Elizabeth Maher Muoio, in her official capacity as Treasurer of the State of New Jersey, and Steven Harris, in his capacity as Administrator of the State of New Jersey Unclaimed Property Administration (together, the "*State Defendants*").

 COLE SCHOTZ P.C.

*States v. Shi*, No. CV1920098MASTJB, 2019 WL 6117738, at *2 (D.N.J. Nov. 15, 2019) (citation and quotation marks omitted); *New Jersey Deer Control, LLC v. EN Garde Deer Def. LLC*, No. CV 24-5587 (MAS) (RLS), 2024 WL 2818277, at *7 (D.N.J. June 3, 2024) (same); *Moore v. GTech Corp.*, No. CV 18-15183 (BRM), 2019 WL 13249275, at *1 (D.N.J. May 30, 2019) (considering whether "expedited discovery would better enable the Court to judge the parties' interests and respective chances for success on the merits' at a preliminary injunction hearing").

"The Court has the discretion . . . to grant leave to conduct discovery prior to the Rule 26(f) conference under Rule 26(d)(1)." *Times Three Clothier, LLC v. Rack's OffPrice*, No. CV 22-3013 (KM) (MAH), 2022 WL 3053946, at *2 (D.N.J. Aug. 3, 2022). Indeed, "motions for expedited discovery are not uncommon in civil litigation." *Wakefern Food Corp. v. Marchese*, No. 22-2150, 2023 WL 3497880, at *3 (3d Cir. May 17, 2023). "Courts in this District have . . . fashioned two standards for assessing whether such a request is appropriate." *Times Three Clothier*, 2022 WL 3053946 at *2. "The most prominent requires movants to show 'good cause' to obtain expedited discovery." *Id.*[2]

"Good cause exists where 'the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.'" *Times Three Clothier*, 2022 WL 3053946 at *2. "Expedited discovery has been ordered where it would better enable the Court to judge the parties' interests and respective chances for success on the merits at a preliminary injunction hearing." *Better Packages, Inc. v. Zheng*, No. CIV.A. 05-4477 (SRC), 2006 WL 1373055, at *3 (D.N.J. May 17, 2006) (internal quotation marks and citations omitted). "If narrowly tailored to fit the needs of a preliminary injunction hearing, leave to conduct expedited discovery should be granted." *Id.*

As explained below, the need for expedited discovery here greatly outweighs the prejudice to Defendant.

**The need for expedited discovery is high for the entire class.** Expedited discovery would enable this Court to consider the important constitutional questions presented in the PI Motion on a more complete record. The Third Circuit has noted the significance of the issues. *See Marathon Petroleum Corp. v. Sec'y of Fin. for Delaware*, 876 F.3d 481, 488 (3d Cir. 2017) ("[I]n recent years, state escheat laws have come under assault for being exploited to raise revenue rather

---

[2] The other standard, called the "*Notaro* standard," requires the moving party to demonstrate "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Better Packages, Inc. v. Zheng*, Civ. No. 05-4477, 2006 WL 1373055, at *2 (D.N.J. May 17, 2006) (quoting *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982)). However, "[w]hen a party seeks expedited discovery to support an anticipated motion for preliminary injunction," the "*Notaro* test can be 'circular and ineffective.'" *Park Lawn Corp. v. PlotBox, Inc.*, No. CV 20-1484-RGA, 2021 WL 3490020, at *2 (D. Del. Aug. 9, 2021). This is because "[u]nder a *Notaro*-style analysis, a movant would have to paradoxically demonstrate a 'probability of success' on the merits . . . to justify discovery—discovery that is presumably needed in order to help make a showing of the same type of "likelihood of success" at a later preliminary injunction hearing." *Kone Corp. v. ThyssenKrupp USA, Inc.*, No. CIV.A. 11-465-LPS, 2011 WL 4478477, at *6 (D. Del. Sept. 26, 2011).


COLE SCHOTZ P.C.

Honorable Robert Kirsch, U.S.D.J.                                                    Page 3
February 28, 2025

than to safeguard abandoned property for the benefit of its owners." (citing *Taylor v. Yee*, 136 S. Ct. 929, 930 (2016) (internal quotation marks omitted)).

Expedition is warranted because Plaintiff and the putative class risk ongoing irreparable harm to their property if Defendants are allowed to continue to seize and sell personal property under the NJUPA with its current notice procedures in place.  As the Ninth Circuit opined in directing the entry of an injunction against the California unclaimed property scheme, "[o]nce the property is sold, it may be impossible for plaintiffs to reacquire it, thus creating the requisite irreparable harm."  *Taylor v. Westly*, 488 F.3d 1197, 1202 (9th Cir. 2007) (internal quotation omitted).  The federal district court explained, when entering that injunction, that "[w]hen [the government] takes custody of property pursuant to the [unclaimed property law], even temporarily, certain rights associated with ownership are lost which are not compensable in money damages." *Taylor v. Chiang*, 2007 WL 1628050, *2 (E.D. Cal. June 1, 2007), *vacated as moot*, 2007 WL 3049645 (E.D. Cal. Oct. 18, 2007), *aff'd*, 525 F.3d 1288, 1289 (9th Cir. 2008).  For example, "when securities are transferred out of the owner's name by the state, the owner is deprived of the right to vote his or her shares in important matters of corporate governance." *Id.*  The owner also loses the right to receive dividends, or to have the dividends reinvested. *Id.*  In addition, "[w]hile the state holds those securities, the owner is deprived of the ability to sell them." *Id.*  But New Jersey limits those owners' recovery to merely the "net proceeds of the sale," N.J. Stat. Ann. § 46:30B-79, regardless of any appreciation, dividends, or the deprivation of those rights.[3]

Although this policy results in hundreds of thousands of dollars of loss to even just one family (such as the Borquezes), New Jersey has taken the alarming position in this litigation that Sovereign Immunity prevents such owners from *ever* being made whole monetarily (ECF No. 27). As a result, by definition, this harm—which is undisputedly ongoing—cannot be redressed by legal relief retrospectively.  Limited expedited discovery is warranted, given the important issues presented and the need for this Court to consider Plaintiff's claims on a more fulsome record.

**The prejudice to Defendants here will be minimal.**  To begin, the requests will be narrowly tailored to the preliminary injunction factors.  In fact, for the purposes of further streamlining discovery and the preliminary injunction process, Plaintiff provided Defendants a proposed set of stipulations outlining undisputed facts and conclusions of law on February 20, 2025.  Those proposed stipulations are attached as **Exhibit A** and were provided in substantively the same form to Defendants on February 20, 2025 (albeit the formatting has been improved prior to submission to the Court).  If the Parties can negotiate these uncontested conclusions of law and findings of fact, those stipulations would provide laser-like focus to discovery and inform the Court regarding any truly disputed issues of fact and/or law.  Discovery would only be conducted regarding any remaining factual issues on which the Parties cannot agree to stipulate.  Assuming a fair number of the stipulations are agreed upon, Plaintiff envisions no more than 5 targeted RFPs, 10 interrogatories, and a single 30(b)(6) deposition.  If New Jersey agrees to all the stipulations Plaintiff has proposed, then those numbers can be further substantially reduced.

---

[3] "As another example, when the contents of a safe deposit box are seized, the owner is deprived of the use of those articles pending the process he or she must go through to get them returned."  *Taylor*, 2007 WL 1628050 at *2. Indeed, the sentimental (but non-monetizable) contents of safety deposit boxes, may be destroyed without any notice, N.J. Stat. Ann. § 46:30B-87. The sentimental value of the property (such as family heirlooms or photos) is irreplaceable.



New Jersey now calls these stipulations "improper, premature, and unnecessary" without any authority or basis. Critically, neither Defendant objected to the stipulation process (by which Plaintiff would propose stipulations to see if the Parties could narrow the scope of any disputes and to determine to what degree discovery was necessary) during the course of the Parties' discussions. In fact, Defendants seemed open to the idea of stipulations until they were received. To date, Defendants have not even considered whether any of the stipulated points are contested or uncontested—which Plaintiff believes would be not only useful in narrowing discovery in a laser-like fashion, but helpful to the Court in ultimately devising conclusions of law and findings of fact, while also focusing proceedings on any issues actually in dispute.

Defendants seek to bypass this deliberative and focused process that would result in a fully informed decision based on a record. But even in so arguing, Defendants do not—and cannot plausibly—contend that reviewing stipulations and engaging in very limited and targeted discovery is unduly burdensome. Instead, Defendant proposes to bypass the development of a record altogether for reasons that, as explained in Section II below, do not withstand scrutiny. We respectfully contend that the issues presented (both on behalf of property owners' Constitutional rights and the State's statutory schema) are so important that they should be decided on a full record.

It is deeply ironic that New Jersey seeks to limit this Court's consideration to the allegations in the complaint alone (without discovery or a record), but then, in the same breath relies on factual assertions that are **not** in the complaint, including (a) when the Borquezes contacted New Jersey to seek their return of property (New Jersey now asserts 2023), (b) when the Exxon stock escheated to New Jersey (New Jersey now asserts "property that escheated to New Jersey in 2012"), and (c) that "no auditor was involved in the escheat of Plaintiff's property." New Jersey cannot have it both ways: either these facts matter (in which case, we need an evidentiary record) or they don't (in which case why is New Jersey resting on them in arguing against preliminary injunction?). It is also deeply ironic that New Jersey chastises Plaintiff for relying on speculation regarding whether they would receive notice: the avoidance of speculation is precisely the purpose of building a record as to the processes New Jersey undertakes in issuing notice.

Moreover, as outlined in Section III below, the schedule Plaintiff proposes would leave Defendants ample time to respond to these very limited discovery requests—and would not require Defendants to answer or otherwise respond to the complaint until after the Court has the opportunity to consider the weighty issues implicated by the PI Motion.

### B.    The State Defendants' Position

Plaintiff's proposal to conduct extensive discovery prior to the Court's consideration of his motion for a preliminary injunction and postpone the filing of motions to dismiss the complaint is improper because the Court must first make threshold justiciability rulings. Courts have consistently dismissed challenges to unclaimed property laws on justiciability grounds. *See, e.g.*, *James v. Hegar*, 86 F.4th 1076, 1084 (5th Cir. Nov. 16, 2023) (reversing district court's denial of Eleventh Amendment sovereign immunity and directing dismissal of complaint for lack of standing); *Schramm v. Mayrack*, No. 22-1443, 2024 U.S. Dist. LEXIS 174371, at *15 (D. Del. Sept. 26, 2024) (dismissing claim for return of original shares of stock that had been liquidated for lack of jurisdiction due to sovereign immunity and claim challenging state's use of third party



auditors for lack of standing because plaintiff failed to allege individualized harm); *Peters v. Cohen*, No. 22-cv-00266, 2024 U.S. Dist. LEXIS 26638, at *12 (E.D. Cal. Feb. 14, 2024) (dismissing suit because plaintiff lacked standing to enjoin state from prospectively enforcing the unclaimed property law and Eleventh Amendment barred federal court from adjudicating claim for alleged harm due to transfer and liquidation of shares where plaintiff had received the proceeds from sale of stock); *Knellinger v. Young*, No. 22-cv-01379, 2023 U.S. Dist. LEXIS 2919, at *14 (D. Colo. Jan. 6, 2023) (dismissing complaint on multiple grounds, including lack of standing, because plaintiffs' fear that they "could be subject to future wrongful seizure of their property" failed to satisfy their pleading burden under *Lujan*).

Though Plaintiff tries to ignore the dispositive issues of this Court's jurisdiction and the sufficiency of his complaint, this Court cannot. Standing is a "fundamental jurisdictional question;" therefore, "challenges to standing must be addressed before reaching the merits." *AT&T Commc'ns of N.J., Inc. v. Verizon N.J., Inc.*, 270 F.3d 162, 168 (3d Cir. 2001); *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) ("A federal court's obligation to assure itself that it has subject matter jurisdiction over a claim is antecedent to its power to reach the merits of that claim."). Such determinations should be made before the parties and this Court invest valuable time and resources on discovery or an evidentiary hearing.

Plaintiff's request for expedited discovery in this case should be considered in light of its demonstrative lack of diligence and urgency to date. Mr. Borquez passed away in 2006, leaving property that escheated to New Jersey in 2012. Over a decade later, in 2023, Plaintiff's representative filed a claim with UPA and was paid $487,054.84. Plaintiff decries an emergency, but delayed more than a year after payment of its claim before filing this litigation, and again delayed more than six weeks before seeking preliminary injunctive relief. Plaintiff now seeks to expedite that which it has never shown diligence or urgency in pursuing.

Plaintiff's allegations of actual and imminent harm are entirely speculative, and contingent upon the occurrence (or non-occurrence) of a series of events. Plaintiff's alleged harm would require Plaintiff to own property that is subject to the NJ UPA, which has not been alleged in the complaint or motion. Plaintiff must have refrained from taking any action indicating ownership of that property for the entire dormancy period, which is typically three years. *See* N.J.S.A. 46:30B-7 (3-year dormancy period for property generally); N.J.S.A. 46:30B-31 (3-year dormancy period for stock); N.J.S.A. 46:30B-7.1 (no presumption of abandonment where there is evidence of communication between owner and holder). Then, Plaintiff's claim requires this Court to assume that he will not respond to any pre-escheatment notice provided by the holder or that the holder will not provide the statutory required pre-escheatment notice, resulting in Plaintiff's property being reported as abandoned to the State. This remote, contingent, and speculative harm to Plaintiff is not the type of injury for which preliminary injunctive relief issues. These hypothetical events are not conducive to stipulation of the parties. Nor should they be permitted to serve as the proverbial "foot in the door" that opens the Defendants to wide-ranging discovery.

Finally, in no way can the discovery sought by Plaintiff be described as "limited." The relief sought on a preliminary basis is virtually identical relief sought in the complaint. *Compare* Doc. No. 1 and Doc. No. 21-5. Thus, the matters subject to discovery encompass every allegation of the complaint, regardless of whether Plaintiff's claim arose from such facts. For example, proposed discovery topics include the role of auditors in New Jersey's unclaimed property system,

 COLE SCHOTZ P.C.

Honorable Robert Kirsch, U.S.D.J.                                                    Page 6
February 28, 2025

although no auditor was involved in the escheat of Plaintiff's property; UPA's procedures relating
to property valued under $50, although Plaintiff has not alleged ownership of property having such
*de minimis* value; and the UPA's handling of non-monetary contents of safe deposit boxes despite
Plaintiff's claim arising from escheated stock.  It is disingenuous for Plaintiff to claim its discovery
is "laser focused."

     The State Defendants' position is that the preliminary injunction motion should first be
briefed and argued on the legal issues, as they are dispositive.  No stipulations or wide-ranging
discovery is needed for that threshold ruling.  Only then could discovery truly be conducted in a
focused, targeted manner.

### C.    <u>Kelmar's Position</u>

     For the reasons set forth below in Section V, Kelmar does not believe it should be involved
in the preliminary injunction motion or any expedited discovery.

## II.    THE PUTATIVE MOTIONS TO DISMISS

### A.    <u>The State Defendants' Position</u>

     Plaintiff has advised that he contemplates filing an amended complaint pursuant to Fed. R.
Civ. P. 15(a) to address the pleading deficiencies alleged by the State Defendants and Kelmar in
their pre-motion letters to this Court.  The State Defendants feel strongly that the most efficient
way to proceed in this case would be for Plaintiff to make his determination before Defendants are
required to file responsive pleadings.  The filing of an amended complaint after Defendants move
to dismiss would unduly prejudice Defendants and needlessly consume party resources.

     Legal issues predominate the preliminary injunction motion and motions to dismiss.  The
State Defendants do not believe that discovery is required for determination of the preliminary
injunction and motions to dismiss, and propose to simultaneously respond to Plaintiff's motion for
a preliminary injunction and move pursuant to Fed. R. Civ. P. 12(b) for dismissal of Plaintiff's
complaint. Moreover, Plaintiff's "proposed joint stipulation of facts and law" is improper,
premature, and unnecessary for the Court to resolve the parties' anticipated motions.

### B.    <u>Plaintiff's Position</u>

     Plaintiff does not believe that a motion to dismiss should be briefed or decided in parallel
with a preliminary injunction motion because one of the prongs of the preliminary injunction
motion necessarily will cover the same ground: the likelihood of success on the merits. Briefing
both motions simultaneously is therefore duplicative and unnecessary.

     Moreover, it is not in the interests of justice to decide a motion to dismiss on the pleadings
when there is a fully developed factual and legal record on which it can decide the preliminary
injunction motion. The burden of briefing the merits of this case twice in two different sets of
motions outweighs any plausible benefit from litigating both motions at the same time. Finally,
Plaintiff will agree to a stay of the Defendants' obligation to answer or otherwise respond to the
complaint until after the PI process is complete—further minimizing the burden on the Defendants.


COLE SCHOTZ P.C.

Honorable Robert Kirsch, U.S.D.J.                                                                    Page 7
February 28, 2025

New Jersey argues that the motions to dismiss must be decided before any discovery because there are "justiciability" issues related to the Eleventh Amendment and Standing. But New Jersey does not—and cannot—argue that the interests of justice would be served by the Court having to consider these weighty issues in a vacuum. Moreover, our proposed stipulations and discovery would develop a record that informs these exact "justiciability" issues—including factual issues revolving around the likelihood of recurrence (relevant to standing) and whether relief requires resort to the State's treasury (relevant to the Eleventh Amendment)—and our proposal develops them on the record for the Court to make a fully informed decision.

Finally, the cases New Jersey proffers in favor of foregoing a record do not support its position. *New Jersey Staffing* was a dormant commerce clause case coupled with a void for vagueness challenge—both of which inherently hinge on the language in the statute rather than the operations and actions performed by the State. *See N.J. Staffing All. v. Fais*, 110 F.4th 201 (3d Cir. 2024). There was simply less of a need for discovery in that case than here. The next case—*Behavioral Momentum*—specifically held that there **was** a need to develop a record of evidence ruling on a preliminary injunction motion. *See Behav. Momentum LLC v. We Care Autism Servs.*, No. 24-cv-4734 (MAS)(JBD), 2024 U.S. Dist. LEXIS 175972, *6 n.6 & *8 (D.N.J. Sept. 27, 2024) (ordering the parties to "accumulate all evidence" in an evidentiary hearing before ruling on a preliminary injunction motion because "Plaintiff has not yet persuaded this Court that this matter is one where the risk of irreparable harm exists"). Additionally, *Great Ceasars* simply did not address the issue here of one party seeking to develop a record through stipulations and discovery. *See Great Caesars Ghost LLC v. Unachukwu*, No. 19-cv-5408 (JMV)(JBC), 2019 U.S. Dist. LEXIS 64257, *3-4 (D.N.J. Feb. 19, 2019). Finally, neither *AT&T Communications* nor *Finkelman* take place in the context of a preliminary injunction motion—nor do either stand for the proposition that discovery to inform that preliminary injunction decision should be skipped. *See AT&T Commc'ns of N.J., Inc. v. Verizon N.J., Inc.*, 270 F.3d 162 (3d Cir. 2001); *Finkelman v. Nat'l Football League*, 810 F.3d 187 (3d Cir. 2016).

## III.    PROPOSED SCHEDULE

### A.    <u>Plaintiff's Position</u>

Plaintiff proposes to file an amended brief in support of the preliminary injunction motion on May 2 incorporating the facts adduced during the discovery and stipulation process. The amended brief would present both the factual and legal issues in a single document, thus reducing the burden on the Court while also providing the Defendants with a single document to which to respond.

With respect to the hearing on the PI Motion, Plaintiff respectfully requests that the Court schedule it at its earliest convenience in June. Allowing for the stipulation/discovery process Plaintiff contemplates will also greatly streamline the hearing. Most notably, Plaintiff does not anticipate calling any live witnesses in support of the motion because he believes that the proposed discovery and stipulation process will be able to develop the necessary factual record. In that event, Plaintiff believes that a 3-hour PI hearing would be sufficient because the remaining questions presented will be primarily issues of law.


COLE SCHOTZ P.C.

Honorable Robert Kirsch, U.S.D.J.                                                    Page 8
February 28, 2025

| Event | Date |
|---|---|
| Deadline for the parties to agree on stipulations | March 7 |
| Deadline for Issuing Discovery | March 14 |
| Deadline for Written Responses and Productions; Expert Reports/Declarations | April 18 |
| Deadline for Plaintiff's Amended Brief in Support of PI Motion Incorporating Facts Stipulated or Adduced in Discovery | May 2 |
| Deadline for Defendants' PI Response Briefs | May 16 |
| Deadline for Plaintiff's PI Reply Briefs | May 30 |
| PI Hearing | June |

IN THE ALTERNATIVE, in the event the Court determines to permit the filing of Motions to Dismiss on the same timetable as the PI Motion, Plaintiff proposes the following schedule:

| Event | Date |
|---|---|
| Deadline for the parties to agree on stipulations | March 7 |
| Deadline for Issuing Discovery | March 14 |
| *Deadline for Plaintiff to Amend Complaint* | March 18 |
| Deadline for Written Responses and Productions; Expert Reports/Declarations<br><br>*Deadline for Defendants to Respond to the Complaint* | April 18 |
| Deadline for Plaintiff's Amended Brief in Support of PI Motion Incorporating Facts Stipulated or Adduced in Discovery | May 2 |
| Deadline for Defendants' PI Response Briefs<br><br>*Deadline for Plaintiffs to Respond In Opposition to Motions to Dismiss (If Any)* | May 16 |
| Deadline for Plaintiffs' PI Reply Briefs<br><br>*Deadline for Defendants to Reply In Support of Motions to Dismiss (If Any)* | May 30 |
| PI Hearing | June |

By contrast, Defendants' proposed schedules are both highly problematic because they ask this Court to forgo the development of any record before ruling on weighty issues of Constitutional significance. New Jersey argues that the motions to dismiss must be decided before any discovery because there are "justiciability" issues related to the Eleventh Amendment and Standing. As explained above, our proposed stipulations and discovery would develop a record that informs these exact "justiciability" issues—including factual issues revolving around the likelihood of recurrence (relevant to standing) and whether relief requires resort to the State's treasury (relevant to the Eleventh Amendment)—and our proposal develops them on the record for the Court to make a fully informed decision.

Defendants' proposed schedules would also deprive Plaintiff his right under the Federal Rule of Procedure to amend once as a matter of course within "21 days after service of a motion under Rule 12(b)[.]" Fed. R. Civ. P. 15(a)(1)(B). New Jersey's request rests solely on the *ipse dixit* grounds that "[t]he filing of an amended complaint after Defendants move to dismiss would unduly prejudice Defendants and needlessly consume party resources." New Jersey not only proffers zero authority for this request, but New Jersey fails to explain why this "prejudice" does

Case 3:24-cv-11301-RK-JBD    Document 37    Filed 02/28/25    Page 9 of 12 PageID: 280


COLE SCHOTZ P.C.

Honorable Robert Kirsch, U.S.D.J.                                                                    Page 9
February 28, 2025

not occur in every other case where a plaintiff amends its complaint after receiving a motion to dismiss. There is simply **no basis**, legal or factual, for New Jersey's request to abridge Plaintiff's rights under the Federal Rules of Civil Procedure to amend in due course.

Moreover, Plaintiff is willing to spare Defendant of any "prejudice" inherent to drafting a motion to dismiss that may be mooted; Plaintiff will agree to extend the time to respond to the complaint until after the PI Motion is decided. The process Plaintiff proposes would, in fact, be more efficient and less burdensome because it would allow Plaintiff the opportunity to amend its complaint to conform to the evidence after discovery and provide Defendant the option of moving to dismiss on that fully-informed complaint, or it also provide Defendant the opportunity to surface the exact same arguments in opposing the PI Motion within the "likelihood of success on the merits" prong. Respectfully, this Court should not adopt Defendants' suggestion of forcing Plaintiff to amend now (in abrogation of his rights under the Federal Rules) and then summarily adjudicating the case in a vacuum with no record. The law—and justice—demand more.

### B.    The State Defendants' Position

The State Defendants note that on December 4, 2024, Plaintiff commenced a nearly identical putative class action challenging the State of Delaware's unclaimed property statute. *Vial v. Mayrack*, Case No. 1:24-cv-01313-MN. The prosecution of this case has substantially followed the pattern established in the Delaware suit. Specifically, on December 30, 2024, several weeks after the filing of the complaint, Plaintiff filed a motion for a preliminary injunction with temporary restraints against Delaware's implementation of its unclaimed property statute. Plaintiff consented to three extensions of time, granting the Delaware defendants a period of sixty (60) days to respond to the preliminary injunction motion and to file a response to the complaint by the same date, February 27, 2025. The State Defendants thus propose a similar timeline in this case, as follows:

| Event | Proposed Date |
|---|---|
| Defendants' Oppositions to Plaintiff's Preliminary Injunction Motion<br><br>Defendants' Motion to Dismiss the Complaint | April 7, 2025 |
| Plaintiff's Reply in Further Support of his Preliminary Injunction Motion<br><br>Opposition to Defendants' Motions to Dismiss the Complaint | May 7, 2025 |
| Any Replies in Further Support of Defendants' Motions to Dismiss the Complaint | June 6, 2025 |

All motions would be fully briefed by the first week of June. The Court may then decide the motions on the papers pursuant to L. Civ. R. 78.1, or, alternatively, schedule oral argument in the Court's discretion. *See, e.g.*, *N.J. Staffing All. v. Fais*, 110 F.4th 201 (3d Cir. 2024) (affirming district court order entered after oral argument, denying injunctive relief to plaintiffs who asserted a constitutional challenge to a New Jersey statute grounds); *Behav. Momentum LLC v. We Care Autism Servs.*, No. 24-cv-4734, 2024 U.S. Dist. LEXIS 175972, *1 (D.N.J. Sept. 27, 2024) (on basis of parties' written submissions, reserving decision on motion for preliminary injunction pending evidentiary hearing at which plaintiff must demonstrate non-speculative actual or imminent harm); *Great Caesars Ghost LLC v. Unachukwu*, No. 19-cv-5408, 2019 U.S. Dist.


COLE SCHOTZ P.C.

LEXIS 64257, *3-4 (D.N.J. Feb. 19, 2019) (denying TRO and scheduling briefing and oral argument on preliminary injunction, prior to conducting discovery). If the Court determines that there are issues of disputed fact preventing the adjudication of any of the motions, and that an evidentiary hearing is required, the Court could schedule a status conference to determine what, if any, discovery is required, and set a scheduling order thereafter.

## IV.    MEDIATION

### A.    Plaintiff's Position

Plaintiff favors court-assisted mediation should the State Defendants agree to that process.

### B.    The State Defendants' Position

Counsel for all parties appreciate the Court's suggestion to consider mediation. At this stage, the State Defendants do not believe mediation would be fruitful considering the parties' fundamental disagreement on the merits of the complaint. Moreover, Plaintiff challenges the constitutionality of New Jersey's Uniform Unclaimed Property Act, N.J.S.A. 46:30B-1 to -109 ("_NJUPA_"), and the State Defendants are without authority to unilaterally amend the NJUPA or decline to implement it, in whole or in part.

Moreover, the services of a mediator are not required to assure that counsel for the parties communicate in a timely and effective manner. This is not the first putative class action Plaintiff's counsel commenced to challenge the NJUPA in this district court. _See Salvato v. Walsh_, No. 21-cv-12706 (granting State's motion for summary judgment on plaintiff's due process claim and dismissing Takings Clause claim for lack of subject matter jurisdiction). Counsel for the parties worked together in a productive and professional manner throughout that litigation, and we hope and expect that will continue. The State Defendants welcome open communication regarding the expeditious handling of this litigation.

### C.    Kelmar's Position

Kelmar agrees with the State Defendants that mediation is unlikely to be fruitful considering the parties' fundamental disagreement on the merits of the complaint.

## V.    PLAINTIFF'S CLAIMS AGAINST KELMAR

As an initial matter, both Kelmar and Plaintiff view Plaintiff's negligence claims against Kelmar as distinct from those asserted by Plaintiff against the State Defendants. Plaintiff and Kelmar agree that Plaintiff is not arguing the merits of his negligence claim in connection with his preliminary injunction motion. Plaintiff and Kelmar, however, appear to disagree as to whether the preliminary injunction motion and any expedited discovery requires Kelmar's participation.

### A.    Plaintiff's Position

Counsel for Plaintiff has engaged in discussions with counsel for Defendant Kelmar to apprehend the role Kelmar played in the seizure of the Borquezes' property and the services it provides in the unclaimed property regime. Plaintiff has asked Kelmar for evidence substantiating

 COLE SCHOTZ P.C.

Honorable Robert Kirsch, U.S.D.J.                                                                    Page 11
February 28, 2025

Kelmar's counsel's assertions. Depending on the outcome of those discussions, Plaintiff may not have to seek any discovery from Kelmar, the injunction may not impact Kelmar, and Plaintiff believes his claim against Kelmar may be amenable to consensual resolution, which would result a notice of dismissal pursuant to Federal Rule of Procedure 41(a)(1)(i). In the meantime, Plaintiff may request that proceedings against Kelmar be stayed and will file a motion seeking such relief, if and when appropriate.

### B.    <u>Kelmar's Position</u>

Kelmar and Plaintiff (through counsel) are engaged in discussions to determine if Kelmar can be dismissed from this action. Absent voluntary dismissal, Kelmar intends to pursue a motion to dismiss on the grounds set forth in its February 10, 2025 letter to the Court. *See* Pre-Motion Ltr. [Dkt. No. 29]. Kelmar does not agree that a stay is necessary or appropriate. Instead, Kelmar believes that entry of a briefing schedule for a motion to dismiss is appropriate and will still allow the parties ample time to conclude their discussions about the potential for voluntary dismissal.

Because the arguments relating to dismissal of the negligence claim against Kelmar are entirely distinct from the constitutional issues being argued in Plaintiff's motion for a preliminary injunction, Kelmar's position is that briefing on the two issues should proceed on separate tracks. Kelmar proposes the following briefing schedule for a motion to dismiss Plaintiff's claims against Kelmar:

- Any amended complaint to be filed on or before March 18, 2025;
- Kelmar's motion to dismiss to be filed on or before April 11, 2025;[4]
- Plaintiff's opposition to Kelmar's motion to dismiss to be filed on or before April 21, 2025;
- Kelmar's reply to be filed on or before April 28, 2025; and
- Any argument on the motion to be conducted at the Court's convenience after the May 5, 2025 return date.

Because Plaintiff has not moved for a preliminary injunction in connection with his negligence claim against Kelmar, Kelmar does not believe any discovery as to Kelmar is necessary or appropriate at this stage of the proceedings or prior to a decision on Kelmar's motion to dismiss. Plaintiff has not articulated what discovery is necessary from Kelmar.

---

[4] Kelmar proposes the April 11, 2025 deadline as opposed to the deadline proposed by Plaintiff in connection with his proposal because that deadline aligns with this Court's motion cycle.

 COLE SCHOTZ P.C.

Honorable Robert Kirsch, U.S.D.J.                                                                                    Page 12
February 28, 2025

## **CONCLUSION**

The parties look forward to a productive telephone status conference with the Court on March 4, 2025 at 2:00 p.m. regarding the above matters.  As always, the Court's time and attention to this matter are greatly appreciated.

Respectfully submitted,

COLE SCHOTZ P.C.

*/s/ Elizabeth A. Carbone*

Elizabeth A. Carbone

cc:     All Counsel of Record Via CM/ECF