# EXHIBIT A

II.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAIME VIAL, as representative of the heirs of Rene Correa Borquez and on behalf of other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH MAHER MUOIO, in her official capacity as TREASURER OF THE STATE OF NEW JERSEY; STEVEN HARRIS, in his official capacity as ADMINISTRATOR OF THE STATE OF NEW JERSEY UNCLAIMED PROPERTY ADMINISTRATION; and KELMAR ASSOCIATES, LLC,<br><br>Defendants. | Case No.: 3:24-cv-11301 |

**[PLAINTIFF'S PROPOSED] JOINT STIPULATION OF FACTS AND LAW**

Pursuant to the Court's ___, 2025 Order setting forth pre-hearing deadlines, the Parties jointly submit this Stipulation of Facts and Law to narrow the scope of discovery and focus the hearing on only disputed issues of fact and law. Specifically, the Parties have stipulated as to the following:

**I.    Background on the Unclaimed Property Regime**

1.   New Jersey law requires businesses—including banks with safety deposit boxes, brokerages with investment accounts and retirement accounts, or companies that directly issue shares—to escheat property to the State of New Jersey Unclaimed Property Administration once that property is deemed "abandoned." N.J. Stat. Ann. § 46:30B-46.

2.   Property escheated to New Jersey includes stocks, contents of safe deposit boxes, retirement accounts, pension plans, savings accounts, wages, refunds, deposits, and gift cards.

3. If a stock brokerage account makes no deposits, withdrawals, or investments for three years, it may be listed as "abandoned" and its securities subject to escheatment. N.J. Stat. Ann. § 46:30B-7.

### A. The Holder's Role

4. In its public messaging to holders regarding their obligations, the "State of New Jersey's Unclaimed Property Administration (UPA) would like to remind **all businesses with an operating presence in the State of New Jersey** of their obligation to report abandoned or unclaimed funds to the UPA." *See* Holder Reporting Reminder, New Jersey Unclaimed Property, https://www.nj.gov/treasury/unclaimed-property/pdf/HolderReportingReminder.pdf (Permalink: https://perma.cc/ZRN6-7ST7).

5. Most people do not know if their stock custodian has "an operating presence in the State of New Jersey."

6. Whether a stock custodian has "an operating presence in the State of New Jersey" is a fact that can change with no notice.

7. Accordingly, especially people living outside of New Jersey would have no reason to think that their property would be escheated to New Jersey and liquidated.

8. Holders failing to deliver property faces a penalty of 10% above the 52-week treasury-bill rate on the amount not delivered, N.J. Stat. § 46:30B-103, plus $1,000 per day the delivery is withheld (up to a maximum of $250,000), N.J. Stat. § 46:30B-105.

9. Holders delivering property to New Jersey in good faith are "relieved of all liability to the extent of the value of the property paid or delivered for any claim then existing or which thereafter may arise or be made in respect to the property." N.J. Stat. § 46:30B-61

### B. The Auditors' Role

10. New Jersey has hired private auditors to operate the unclaimed property regime, including the identification of supposedly "abandoned" property, the provision of direct mail notice to certain property owners, and the management of the website.

11. These audit firms are compensated on a contingent-fee basis – typically, 10 to 15 percent of any unclaimed property escheated.

### C. The Result

12. In 2023, 236,845 records of unclaimed property were reported and escheated to the state of New Jersey. (https://www.nj.gov/treasury/news/2023/08212023.shtml). https://perma.cc/47BJ-4TY5

13. However, only about 73,686 claims were filed in 2023. (https://www.nj.gov/treasury/news/2023/08212023.shtml). https://perma.cc/U392-9J9B

14. Currently, the Administrator of the State of New Jersey Unclaimed Property Administration holds over $6 billion in purportedly "unclaimed" property. (https://www.nj.gov/treasury/news/2023/08212023.shtml). https://perma.cc/PHJ7-ZJG6

## II. The State's Efforts to Track Down and Notify Owners Prior to Seizure

### A. The Borquezes Specifically

15. Rene Correa Borquez (a Chilean lawyer) purchased shares of United States companies (including some with addresses in New Jersey) throughout the last three decades of the 20th century.

16. When Mr. Borquez died, his estate passed to his brother, Hernan Correa Borquez. When Hernan died, his estate passed to his heirs—all of whom reside in Chile, and none of whom has ever resided in New Jersey.

3

17. Plaintiff Jaime Vial is a Chilean engineer and legal representative of the Estate of Rene Correa Borquez.

18. One of the stocks Mr. Borquez purchased was 905 shares of Exxon Mobil stock. After stock splits those shares are the equivalent of 5,810 shares today.

19. Those stocks escheated to the state and were liquidated.

20. Neither Plaintiff, their predecessors in interest, any heir, nor any other representative of Mr. Rene Borquez's or his brother's estates received any notice that the Administrator had seized the above property. No written or published notice was ever received.

21. The relevant names and addresses of the property owners of Mr. Borquez stock were at all times easily ascertainable.

22. New Jersey did not conduct any investigations or inquiries regarding the Borquez's accounts to determine find the name or address of the owners.

23. New Jersey did not provide mail notice (or individualized notice whatsoever) to Plaintiff, or the Borquez Family, alerting them that their Property was being escheated prior to escheatment.

24. New Jersey did not provide mail notice (or individualized notice whatsoever) to Plaintiff, or the Borquez Family, alerting them that their Property was being liquidated prior to liquidation.

25. New Jersey did not provide the Borquezes mail notice of the escheatment at any point (before or after to the property being escheated to the state).

26. To New Jersey's knowledge, nobody provided the Borquezes notice of the escheatment prior to the property being escheated to the state.

### B. Property Valued Under $50

27. Property without monetary value may be destroyed without any notice before or after destruction. N.J. Stat. Ann. § 46:30B-87.

28. New Jersey does not provide (nor require auditors or holders or anyone else to provide) individualized notice of any kind prior to the seizure of property valued at less than $50.

29. New Jersey does not provide (nor require auditors or holders or anyone else to provide) individualized notice of any kind after the seizure of property valued at less than $50.

### C. Foreign Owners

30. New Jersey provides only two types of notice: certified mail and publication notice via local New Jersey newspapers. However, owners living outside of the United States would receive neither as a matter of course.

31. For property valued in excess of $50, the holder of the property must send by certified mail a written notice to the apparent owner at their last known address informing them that the holder will be turning over their property to the State of New Jersey. N.J. Stat. Ann. § 46:30B-50.

32. However, the United States Postal Service only offers certified mail within the United States, apart from service to U.S. military and diplomatic installations.

33. Accordingly, New Jersey does not require holders to provide direct mail notice, or any individualized notice, to overseas property owners alerting them that their property has been deemed "abandoned" and is subject to seizure by the State.

34. If the owner's last known address was in New Jersey and the property is valued at least $100, the Administrator will also publish the name and last known addresses (if any) in a newspaper circulating in the New Jersey county of that last known address at least once per week for two consecutive weeks. N.J. Stat. Ann. § 46:30B-51.

35. However, if the owner's last known address is outside of New Jersey, the Administrator will simply publish newspaper notice where the holder is located—regardless of where the owner resides or previously resided. N.J. Stat. Ann. § 46:30B-51.

36. The newspaper advertisement does not list either names or shares of stock that have been seized.

37. The newspaper advertisement does not mention stock or securities as an example of property that might have been seized.

38. The Administrator will also post a notice of sale in a New Jersey newspaper based on where in New Jersey the property is being sold --regardless of where the owner resides or has resided. N.J. Stat. Ann. § 46:30B-69

39. Accordingly, New Jersey does not provide any notice to foreign property owners for any of their property that is escheated.

### III. Website Only Provides Limited Post-Deprivation Notice

40. Only after property is transferred to the Administrator by holders does the Administrator place the owner's name and last known address on an Internet website.

41. The New Jersey Unclaimed Property website is maintained by private auditors.

42. The New Jersey Unclaimed Property website only lists names of owners after their property has been escheated.

43. The website provides only a "property ID" and does not contain a description of the property.

44. Nor does the website provide the date when the property was seized.

45. Nor does the website provide the value of the property.

46. Private property is often sold or destroyed before this limited information is posted to the website.

47. The New Jersey Unclaimed Property website information is not cross-referenced against owner information in the Department of Motor Vehicles databases.

48. The New Jersey Unclaimed Property website information is not cross-referenced against owner information in the voter registration databases.

49. The New Jersey Unclaimed Property website information is not cross-referenced against owner information in other New Jersey databases.

50. The website does not allow any narrowing or filtering of the search by any parameters - such as searching for an exact match to a particular name by using quotation marks around the full name.

51. Because search results are capped at 1,000 entries, some seized properties will go unlisted and unreported.

### IV. Irreparable Harm

52. Absent court intervention, the New Jersey Unclaimed Property Administration will continue to operate under the New Jersey Unclaimed Property Law in the same way that adversely impacted the Borquez family.

#### A. Borquezes Specifically

53. One of the stocks Mr. Borquez purchased was 905 shares of Exxon Mobil stock. After stock splits those shares are the equivalent of 5,810 shares today.

54. Those Exxon stocks escheated to the state.

55. Neither Plaintiff, any heir, nor any other representative of Mr. Rene Borquez's or his brother's estates received any notice (mailed, published, or otherwise) that the Administrator had seized the above property.

56. Mr. Vial, as representative of all the heirs of Rene Correa Borquez, submitted a claim and supporting documentation to New Jersey in 2016.

57. The State of New Jersey never acknowledged the validity of his claim until November 6, 2023—which followed Mr. Vial's extensive efforts to recover his assets, including paying $112,144 to a firm to recover those assets.

58. On November 6, 2023, the state acknowledged that it had seized and liquidated the Exxon stock.

59. On November 8, 2023, it paid Mr. Vial $487,581.23 for those shares that were seized.

60. The stock would have been worth $603,000 as of November 8, 2023.

61. The stock would have been worth $623,936 as of the day this lawsuit was filed on December 19, 2024.

62. Additionally, the Borquezes have been deprived of their other ownership rights inherent to stock ownership, including their right to vote on important company matters and the right to receive dividends.

63. Mr. Vial is the owner of and legal representative for additional property potentially vulnerable to seizure and taking under the NJUPA (including other stocks like Exxon purchased directly from companies with New Jersey addresses).

64. Mr. Vial is required to monitor that property continuously in order to ensure that the Administrator does not attempt to seize it.

65. Mr. Vial is incurring, and will continue to incur, the real and concrete cost of having to constantly monitor his property to avoid escheat, including retention of counsel in the United States.

66. The NJUPA deters Mr. Vial and the members of the Borquez family from purchasing additional stock that would be subject to the NJUPA.

### B. Property Under $50

67. When the contents of a safe deposit box are seized, the Administrator holds the contents of safe deposit boxes for varying periods of time and then auctions them off or otherwise disposes of them. The Administrator only reimburses the former owner "the proceeds remaining after deducting the administrator's selling costs." N.J. Stat. Ann. § 46:30B-67.

68. Property without monetary value may be destroyed without any notice before or after destruction. N.J. Stat. Ann. § 46:30B-87.

69. The law specifies that no legal recourse exists for this destruction. N.J. Stat. Ann. § 46:30B-87.

70. As a result, any property that has no monetary value -- for example love letters, the crayon picture of a deceased child, or paper military citations of valor -- in an safety deposit box deemed "abandoned" that has been escheated to New Jersey would be destroyed without even the ability for redress.

71. Sentimental value of the property (such as family heirlooms or photos) is irreplaceable.

### C. Stocks

72. Between one and three years after receipt of the property, the Administrator may sell the escheated property. N.J. Stat. Ann. § 46:30B-69.

73. After the sale is complete, a successful claimant is entitled only to "the net proceeds of the sale," N.J. Stat. Ann. § 46:30B-79, regardless of appreciation or dividends after the sale.

74. There is no compensation for interest or the lost appreciation in the property's value.

75. When securities are transferred out of the owner's name by the state, certain rights associated with ownership are lost, such as the right to vote his or her shares in important matters

of corporate governance, the right to vote his or her shares in important matters of corporate governance, or the ability to sell the securities.

76. There is no compensation for the other rights associated with stock ownership.

**V.      Relief Sought Is Not State Funds**

77. "The New Jersey Unclaimed Property Statute ensures that property owners never relinquish the right to this property and the UPA only acts as a custodian until the property is returned."(https://www.nj.gov/treasury/unclaimed-property/aboutunclaim.shtml#:~:text=The%20New%20Jersey%20Unclaimed%20Property,acts%20as%20a%20custodian%20until) (https://perma.cc/66D8-Q7CN)

78. New Jersey holds the escheated property in a custodial trust until claimed by the owner or the owner's successor in interest. N.J. Stat. Ann. § 46:30B-61.

79. After the unclaimed property is escheated to the state and liquidated, a quarter of the funds are retained in the Unclaimed Personal Property Trust Fund for the payment of claims and all expenses and costs incurred by the State of New Jersey. N.J. Stat. Ann. § 46:30B-74.

80. The Administrator manages an unclaimed property trust fund, which under the NJUPA is "administered and invested by the State Treasurer, and used to pay claims duly presented and allowed and all expenses and costs incurred by the State of New Jersey." N.J. Stat. Ann. § 46:30B-74(a).

81. If their property has not yet been liquidated, property owners submitting valid claims will receive their property back from New Jersey.

82. If the escheated property has been liquidated, the unclaimed property fund is used to pay claimants the proceeds of the sale of their escheated property.

83. Although generally owners of stocks are reimbursed only the proceeds from the sale regardless of appreciation, the law allows the administrator to make the owner whole if it sold

the stocks within one year of receiving it from the holder. N.J. Stat. Ann. § 46:30B-72 ("any person making a claim pursuant to this chapter before the end of the one-year period is entitled to either the proceeds of the sale of the securities or the market value of the securities at the time the claim is made").

Respectfully submitted,

/s/ Draft

11